UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JASPER MAYS, et al                                                                                    PLAINTIFFS

V.                                        CASE NO. 1:88-CV-1076

ARKANSAS DEPARTMENT OF
EDUCATION, et al                                                                                      DEFENDANTS

## ORDER

Before the Court is Defendant Hamburg School District's ("HSD") Motion to Approve Closure of the Wilmot Elementary School Campus and to Modify Gifted and Talented Requirements. (ECF No. 90).[1] Plaintiffs have filed a response (ECF No. 93) and the Hamburg School District has filed a reply. (ECF No. 95). The parties were allowed to conduct discovery on the issues raised in the motion. (ECF Nos. 88, 111 & 120). A hearing on the motion was held on April 27-28, 2015 (ECF Nos. 134-135), and the parties have submitted post-hearing briefs. (ECF Nos. 137, 139-140). The Court finds this matter ripe for consideration. For the reasons set forth below, the Court finds that the motion should be granted.

## BACKGROUND

This action was filed by Plaintiffs on April 8, 1988. The Complaint raised the following concerns about the Hamburg School District: (1) the low number of African-American administrators, teachers, and coaches in the district resulting from discriminatory recruitment and hiring practices (¶ 6, 15); (2) the election of school board members on an at-large basis (¶ 7); (3)

---

[1] HSD's motion made the additional request that this case be dismissed and that HSD be relieved of further Court intervention. After discussions with the Court and the other parties, HSD has agreed to not pursue dismissal of the case at this time. Accordingly, the April 2015 hearing addressed only the issues regarding the modification of the HSD's Gifted and Talented program.

the segregation of African-American and Caucasian students resulting from standardized testing for class placement (¶ 8); (4) a racial imbalance at Wilmot Elementary resulting from the district's decision to allow students from the Wilmot attendance zone to attend Hamburg schools (¶ 9); (5) the disproportionate assignment of African-American students to special education classes, and the disproportionate assignment of Caucasian students to Gifted and Talented classes (¶ 10); (6) student discipline imposed on a racially discriminatory basis (¶ 11-12); and (7) the disproportionate number of African-American children held back in the first grade (¶ 13-14). Plaintiffs requested both injunctive relief and damages based on the above allegations.

The issues raised in the Complaint were resolved by two Orders of this Court entered on August 1, 1991 and September 23, 1991. By agreement of the parties, the August 1991 Order (ECF No. 48) mandated that the Hamburg School District be divided into seven single-member zones for purposes of electing school board members. By further agreement of the parties, a Consent Order was entered on September 23, 1991. (ECF No. 49). This Consent Order disposed of the remaining issues raised in the Complaint as follows. First, the Consent Order mandated the creation of a "Bi-Racial Committee" whose purpose would be to "consider special problems in the district especially as they relate to racial issues, and report to the board with their recommendations for policy changes and solutions." Second, the Order required the school district to "establish appropriate alternative school educational programs for students who are deemed to be in need of disciplinary treatment" and "provide equal educational facilities for those students." Third, the Order required the school district to "make concerted efforts to recruit additional black staff" in order to "eliminate any racial disparity among its staff." Fourth, the Order required the school district to "faithfully adhere to its attendance zones for all school facilities and for all students regardless of race….[S]tudents whose natural parents reside in the

District…shall attend school in the attendance zone in which their natural parents reside[.]" Fifth, the Consent Order addressed the issue of the Wilmot Elementary School campus as it related to the Hamburg School District's Gifted and Talented Program. It is this portion of the Consent Order that is most vital to the issues raised in the present motion. The Consent Order stated in relevant part:

> Beginning with the 1991-1992 school year and continuing thereafter, all Gifted and Talented Programs for elementary students, run by the district, will be held exclusively at the Wilmot [Elementary] School. A number of educational and desegregative benefits will flow from this arrangement. By locating this program in the Wilmot School, many black elementary students will be relieved of some of the disparate burden of busing/travel which could attend their education in the higher grades since Wilmot does not have an education presence beyond the 6th grade. Additionally, because of the special opportunities offered through G&T, white and black students from throughout the district will be encouraged to attend the Wilmot facility. The resulting influx of white and black students from throughout the district for gifted and talented programs will tend to desegregate the educational experience at Wilmot.

The Consent Order was silent on the logistics of how the GT program was to be set up at Wilmot. In accordance with the mandate regarding strict adherence to attendance zones and state guidelines for conducting elementary GT programs, the HSD implemented a "pull-out" GT program at Wilmot Elementary. In a pull-out program, GT students are pulled out of their regular classrooms for 150 minutes of GT instruction per week. In this case, students from HSD attendance zones outside Wilmot (i.e. Noble/Allbritton Elementary and Portland Elementary) were to be bused to Wilmot Elementary one day a week for GT instruction. Sandra Oliver, the GT Coordinator for the HSD, testified that the Noble/Allbritton GT students depart on a bus at 9:15 a.m., pick up GT students from Portland Elementary, and arrive at Wilmot Elementary at approximately 10:15 a.m. The GT students from Noble/Allbritton and Portland then depart

Wilmot Elementary at 1:30 p.m. The GT program appears to have been operated in this way—as a pull-out program—from the 1991-1992 school year to the present.

The Court retained jurisdiction over the terms of the 1991 Consent Order in order to ensure compliance with its terms. Since 1991, the parties have sought Court approval on a few different issues. In 1994, HSD filed a Motion for Approval of Zone Plan. (ECF No. 53). The motion addressed the voluntary annexation of the Parkdale School District into the Hamburg School District. The rezoning was unopposed and was approved by this Court on August 26, 1994. (ECF No. 55). The former Parkdale School District was added to the Wilmot attendance zone, roughly doubling the size of the Wilmot attendance zone.

There was no further action in this case until 2004 when HSD filed a Motion to Dismiss or in the Alternative, Approve Annexation. (ECF No. 56). HSD requested that the Court approve the consolidation of the Fountain Hill School District into the Hamburg School District and dismiss this case due to its compliance with the Court's previous orders. By agreement of the parties, an Order approving the consolidation was entered, but the case was not dismissed. (ECF No. 57).

On March 9, 2005, a Motion to Approve School Board Zones, to Modify Gifted and Talented Requirements, and to Permit Intra-District Zone Transfers was filed by HSD. (ECF No. 58). On April 7, 2005, the pleading was amended. (ECF No. 60). The motion stated that the rural portions of the Hamburg School District, including Wilmot, had suffered tremendous population loss and that the change in demographics had "resulted in an inequitable, inefficient allocation of students and resources throughout the district." As a result, the school district requested that the Consent Order be modified to relieve HSD from its obligations to strictly adhere to attendance zones and house its elementary GT programs at Wilmot Elementary.

Plaintiffs opposed the motion. A hearing on the motion was held on June 14, 2005. Thereafter, the parties reached an agreement and submitted stipulations (ECF Nos. 66-67 & 69) for the Court's approval. An Amended Order approving the stipulations was entered on June 28, 2005. (ECF No. 70). As to the modification of the attendance zone requirement, the parties agreed to defer any decisions on the matter "pending further studies made subsequent to the school board elections in September 2005." Accordingly, the Court found that the attendance zone issue was moot and denied HSD's motion as to that issue. As to the modification of the GT program, the Amended Order held as follows:

> [T]he parties have agreed to defer any decision on this matter until after the school board election in September 2005. In the event that the Board determines that its elementary level gifted and talented program should be modified, the Plaintiffs have agreed that they will support the Board's decision, provided that it is justified by legitimate reasons of educational benefits and financial feasibility. Any such changes shall be adopted only after a public hearing is held upon at least 20 days notice which sets out the proposed changes in detail. Therefore, the Court finds that this matter is moot at this time and hereby denies Defendant's motion as it relates to the modification of the district's elementary level gifted and talented program.

After the 2005 Order, there was no action taken in this case until 2014. On January 10, 2014, HSD filed a Motion to Reopen Case to Approve Closure of the Wilmot Elementary School Campus and to Modify Gifted and Talented Requirements. (ECF No. 71). A hearing on the motion was held on June 10 and June 18, 2015. (ECF Nos. 83 & 85). On the second day of the hearing, the parties expressed their desire to participate in a settlement conference with a magistrate judge. The hearing was adjourned, and the parties participated in a settlement conference on August 14, 2014. (ECF No. 87). No agreement was reached. As a result, Wilmot Elementary remained opened for the 2014-2015 school year. HSD filed an updated motion

5

regarding the modification of GT requirements and the closure of Wilmot Elementary for the 2015-2016 school year. (ECF No. 90). It is this motion that is currently before the Court.

HSD argues in its motion that, since the entry of the Consent Order in 1991, there have been substantial changes in the composition of the Hamburg School District. These changes include the consolidation of the former Fountain Hill and Parkdale School Districts into the Hamburg School District and the substantial decline in population in the more rural areas of the district. As to Wilmot Elementary specifically, HSD argues that its enrollment has dwindled to an unsustainable level, even with the annexation of the Parkdale School District into the Wilmot attendance zone. Enrollment at Wilmot dropped from 81 students for the 2011-2012 school year to 49 students in 2014-2015.[2]

The HSD School Board began discussing the declining enrollment at Wilmot in 2012. The issue was first raised at a board meeting on November 12, 2012. (HSD Exh. 1).[3] A public forum, which was publicized on the front page of the Ashley County Ledger, was held on December 4, 2012. (HSD Exh. 2-3). The public was allowed to comment on the potential closure of Wilmot and raise any related concerns. At a February 11, 2013 board meeting, the school board voted to leave Wilmot Elementary open and combine grades K-1, 2-3, and 4-5 into three classrooms with one teacher and one paraprofessional for each combined class. (HSD Exh. 8). A second public forum concerning Wilmot Elementary was held on November 18, 2013 at 5:00 p.m. (HSD Exh, 11-13). At the scheduled board meeting at 6:00 p.m. that same day, the board unanimously voted to close Wilmot Elementary at the end of the 2013-2014 school year. The

---

[2] The number of students was at its lowest in 2013-2014 with a total of 42 students.

[3] All of the following exhibit citations reference exhibits admitted at the April 2015 hearing.

board also determined that Wilmot students would be given the option to attend either Noble/Allbritton Elementary or Portland Elementary.

Roughly two months after the school board vote, HSD filed their original motion seeking this Court's approval of the closure. In the original motion and the motion currently before the Court, HSD maintains that the low enrollment at Wilmot has put a significant financial strain on the district that is not sustainable. HSD also maintains that the GT program is suffering from a lack of participation because of its location at Wilmot and that the students at Wilmot are not being well served by the current combined classroom configuration. HSD argues that these changed circumstances warrant a modification of the 1991 Consent Order that would allow for the closure of Wilmot Elementary and for the GT program to be held at another campus.

Plaintiffs oppose the closure of Wilmot Elementary. Plaintiffs read the Consent Order as requiring a "continued educational presence" on the Wilmot Elementary campus and argue that there are no changed circumstances that justify closing Wilmot Elementary or moving the GT program. Plaintiffs also argue, for the first time since the 1991 Consent Order was entered, that the way the GT program is conducted at Wilmot is not in compliance with the Order and this non-compliance has caused Wilmot's numbers to decline. Plaintiffs argue in the alternative that if an HSD elementary school needs to be closed for budgetary reasons, Portland Elementary should be closed and its students should be consolidated with Wilmot Elementary.[4]

---

[4] In 1990, this Court granted a Motion to Intervene filed on behalf of African-American citizens and Caucasian citizens of Ashley County who were patrons and parents of minors attending Portland Elementary School. (ECF Nos. 15-17). Because the closure of Portland Elementary School was raised as an alternative option by Plaintiffs, the Portland Intervenors requested that they be heard on the issues raised in HSD's motion. (ECF No. 112). The Court determined that the Portland Intervenors' continued presence in this case was warranted (ECF No. 132) and allowed them to submit argument on the issues presented at the April 27-28, 2015 hearing.

## DISCUSSION

Before discussing the standard to be applied to consent decree modifications and the parties' arguments on those specific issues, the Court would like to make some preliminary points about the goals of the 1991 Consent Order and whether those goals have been met in the intervening 24 years.

Importantly, the focus of the 1988 Complaint and the 1991 Consent Order was not to ensure that Wilmot Elementary remained open even in the face of major population changes, loss of enrollment, or other contingencies. Rather, the goal was to ensure that all of the Hamburg School District's operations would be conducted on a desegregated, non-discriminatory basis. To this end, the parties agreed to (1) prohibit Wilmot residents from attending school outside of their attendance zone and (2) operate all elementary level GT programs at Wilmot. The parties hoped that the retention of Wilmot residents, along with an influx of GT students, would "desegregate the educational experience at Wilmot." (ECF No. 49).

Despite the efforts of the parties to craft an agreement that would desegregate the educational experience at Wilmot, the student body has continued to be disproportionately African-American, enrollment has consistently decreased over the years, and the GT program operations have been less than ideal. The well-intentioned goals of the Consent Order have been frustrated for various reasons. Wilmot's prospects were limited by the mandate in the Consent Order that there be strict adherence to attendance zones. Because students from other HSD attendance zones did not have the option of attending Wilmot as fulltime students, there was never an opportunity for Wilmot to have an influx of new students who desired to attend for the convenience of participating in the GT program. Elementary students from the Noble/Allbriton and Portland attendance zones had no choice but to be bused to Wilmot for the limited purpose

8

of attending GT classes one day a week. Accordingly, the desegregative effect of having the GT program at Wilmot was destined to be limited based on the design of the Consent Order.[5]

The goals of the 1991 Consent Order have also been hindered by the changing demographics in the area. The town of Wilmot has suffered from a downturn in population that has beset many rural communities in Arkansas. According to United States Census Bureau statistics, the total population of Wilmot was 786 in 2000. The population of 5-14-year-olds was 118. The total population dropped to 550 in 2010, and the population of 5-14-year-olds dropped to 83. It is reasonable to assume, based on Wilmot Elementary's current enrollment, that the population has continued to decrease since 2010. These numbers reflect a consistent downturn in population since the Consent Order was entered in 1991. The parties have not offered any evidence to indicate that this trend will not continue. Unfortunately, the loss of population and lack of growth prospects in the city of Wilmot appear to have prevented Wilmot Elementary from sustaining its enrollment and/or attracting new families with children to the area.

---

[5] Plaintiffs argue in response to HSD's motion that the "pull-out" GT program instituted at Wilmot in 1991 and continuing to the present day has always been in violation of the Consent Order. Plaintiffs' position appears to be that, in spite of the Consent Order's language about strictly adhering to attendance zones, GT students from all over the district were supposed to attend school full time at Wilmot. The Court disagrees. First, the evidence shows that the elementary GT program in the Hamburg School District has historically operated as a pull-out program, even before the GT program was centralized at Wilmot. Second, the Consent Order was unequivocal in its requirement that students attend school in the attendance zone where their parents reside. Finally, the GT program at Wilmot was operated as a pull-out program from 1991-2014 without any indication from Plaintiffs that they were dissatisfied with the program or that it was in violation of the Consent Order. It was not until HSD filed their Motion to Approve Closure and Modify GT Requirements in 2014 that Plaintiffs took this position. Plaintiffs had ample opportunity before 2014 to object to the way the GT program was being conducted—particularly in 2005 when HSD made their first attempt to modify the GT requirements and move the program away from Wilmot. After 23 years of silence on the subject, Plaintiffs' arguments on this point strain credibility.

In sum, the considerations above provide the needed context to analyze the facts and figures provided by the parties detailing Wilmot Elementary's current enrollment, its finances, and its GT program participation. The Court will now consider whether the circumstances at Wilmot Elementary warrant a modification of the Consent Order that would allow the GT program to be held at another location.

"A party seeking modification of a consent decree 'must establish that a significant change in facts or law warrants revision of the decree.'" *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist., No. 1*, 56 F.3d 904, 914 (8th Cir. 1995) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992)). If a significant change in circumstances is shown, the Court must then determine "whether the proposed modification is suitably tailored to the changed circumstance." *Id*. (internal quotations omitted). In 2005, Plaintiffs and HSD stipulated that a modification to the GT program should be allowed if the modification is "justified by legitimate reasons of educational benefits and financial feasibility." (ECF No. 70). Accordingly, the Court will also consider these factors.

Enrollment at Wilmot dropped from 81 students for the 2011-2012 school year to 59 students for 2012-2013. Enrollment further decreased to 42 students for the 2013-2014 school year and increased to 49 students in 2014-2015. For the 2012-2013 school year, Wilmot operated at a deficit of $206,063.98 with a per student expenditure of $10,303.19. (HSD Exh. 15). The per student expenditure in 2012-2013 exceeded Wilmot's per student funding by $3,492.61. (HSD Exh. 21). For the 2014-2015 school year, with three combined classes of grades K-1, 2-3, and 4-5, Wilmot operated at a deficit of $126,588.23.[6] (HSD Exh. 16).

---

[6] For purposes of comparison, Portland Elementary, with an enrollment of 131 students, operated with a $132,499.96 surplus in 2012-2013. In 2014-2015, Portland Elementary operated with a $224,518.48 surplus. (HSD Exh.17-18). A cost-per-student analysis completed by HSD in 2015

Superintendent Max Dyson testified at the hearing that Wilmot's yearly deficits are not sustainable. He identified the operation of Wilmot Elementary as the primary source of the Hamburg School District's financial deficits.

As to educational considerations, the Wilmot students are currently testing at or near the same levels as students at Noble/Allbritton Elementary and Portland Elementary. With combined grades and three teachers teaching two grades each, Superintendent Dyson testified that the current student/teacher ratio at Wilmot is 8:1. For purposes of comparison, the student/teacher ratio at Noble/Allbritton is 19:1, and the student/teacher ratio at Portland Elementary is 18:1. However, there are some indications that the combined classroom setting at Wilmot has presented challenges for the teachers. School board minutes reflect that the Wilmot teachers feel that "there is not enough time in the day to teach both grades." (HSD Exh. 14). Moreover, HSD has expressed its concern that the Wilmot students in these extremely small classroom environments are not being sufficiently challenged in terms of classroom competition and are not being exposed to other cultural viewpoints that might exist in a larger classroom setting. HSD also points out that, due to the isolated setting of the campus, Wilmot students do not currently have the opportunity to participate in after-school tutoring, remediation, and other programs that are available at other campuses.

As to the GT program at Wilmot, each year for the past several years, a handful of students have declined to participate in the program despite having been accepted. (HSD Exh. 65A). For 2010-2011, it was noted that twelve students did not turn in forms that would have given the school district permission to test them for entry into the GT program. The

---

states that Noble/Allbritton operated with a $6,405.37 cost per student; Portland operated with a $7,295.99 cost per student; and Wilmot operated with a $13,254.05 cost per student. (HSD Exh. 22).

11

transportation challenges for GT students have likely contributed to a lack of participation. GT students travel by bus to Wilmot, departing Noble/Allbritton at 9:15 a.m., picking up GT students at Portland Elementary, and arriving at Wilmot Elementary at approximately 10:15 a.m. The GT students from Noble/Allbritton and Portland then depart Wilmot Elementary at 1:30 p.m and return to their regular classes between 2:00-2:30 p.m. Due to their participation in the GT program and the bus ride, Noble/Allbritton and Portland GT students are absent for 1-2 hours of regular classroom instruction per week.

Upon consideration of the facts above and the arguments presented at the hearing of this matter, the Court finds that a modification of the Consent Order is justified due to the substantial changes that have come to the Wilmot campus in the 24 years since the Consent Order was entered. Wilmot's enrollment numbers have dropped drastically since the Consent Order was entered, and its financial status has been heavily impacted as a result. The Court is satisfied with HSD's evidence showing that the continued operation of Wilmot is a significant financial hardship on the district. The goals of the Consent Order—that the educational experience in the HSD occur on a desegregated basis—are not being served by Wilmot's continued operation in the face of major financial strain to the district. Moreover, the Court has concerns about the educational experience at Wilmot. There are indications that the combined grades classroom configuration has put a strain on the teachers who are faced with teaching a full curriculum to two different grades every day. The Court has no reason to doubt that the teachers at Wilmot are providing excellent instruction to their students under the circumstances. However, combined grades are not an ideal situation where there are viable alternatives. Lastly, the Court is hopeful that, by attending Noble/Allbritton or Portland, Wilmot students will benefit from the more desegregated, diverse environments that these schools offer. A racially balanced and culturally

diverse educational environment was the goal of the 1991 Consent Order, and the Court is confident that the Noble/Allbritton and Portland campuses will provide this to the Wilmot students.

In sum, the enrollment situation at Wilmot is not sustainable in the long term. Plaintiffs are asking the Hamburg School District and the Court to take extraordinary measures to keep the Wilmot campus open. These measures are not required or justified by the terms of 1991 Consent Order. The Court cannot allow the Order to be used in a way that obstructs and prevents the HSD School Board from making decisions about how district resources are best allocated in the face of major demographic shifts in the area. In this instance, the HSD school board's unanimous vote to close the Wilmot campus was based upon legitimate financial and educational concerns. Accordingly, the Court finds that the proposed modification to the GT program is suitably tailored to the changed circumstances at Wilmot Elementary and will comply with the goals of Consent Order.

The Court is aware that Wilmot Elementary is an important part of the city of Wilmot, and that the city will feel a great loss with its closure. The Court also recognizes that there will be a travel burden placed upon the elementary students living in Wilmot who will have to travel to attend school at Portland Elementary or Noble/Allbritton Elementary.[7] While the Court is sympathetic to this burden, the Court finds that the distance that will be traveled by Wilmot students is not unduly excessive under these circumstances.

---

[7] Portland Elementary is roughly 12 miles from Wilmot Elementary. Noble/Allbritton is roughly 23 miles from Wilmot Elementary. Wilmot students will be given the choice of which school they want to attend.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant Hamburg School District's Motion to Approve Closure of the Wilmot Elementary School Campus and to Modify Gifted and Talented Requirements (ECF No. 90) should be and hereby is **GRANTED**. The Court's 1991 Consent Order (ECF No. 49) is hereby amended to relieve the Hamburg School District from its obligation to hold its Gifted and Talented elementary program exclusively at the Wilmot Elementary campus.

IT IS SO ORDERED this 27th day of July, 2015.

    /s/ Susan O. Hickey
Susan O. Hickey
United States District Judge